**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BYRON J. FORE,<br><br>　　　Plaintiff<br><br>v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, et. al.,<br><br>　　　Defendants | Case No.: 3:17-cv-00737-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 27 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 27, 27-1 to 27-10, 29-1.) Plaintiff filed a response. (ECF No. 34.) Defendants filed a reply. (ECF No. 34.)

After a thorough review, it is recommended that that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) Defendants are Dr. Catherine Yup[1] and Desire Hultenschmidt. Dr. Aranas

---

[1] Dr. Yup was substituted in for Dr. Young. (ECF No. 21.)

was dismissed without prejudice for lack of service under Federal Rule of Civil Procedure 4(m). (ECF No. 32.)

On screening, Plaintiff was allowed to proceed with claims for retaliation and Eighth Amendment deliberate indifference to a serious medical need related to dental care at LCC. (ECF No. 3.) Plaintiff alleges that starting in December of 2016, Defendants ignored his dental pain, and provided restorative care and extraction of one tooth per dental visit, but this caused him to have "mental delirium and/or physical anguish." He alleges that they knew he was in pain and that other teeth were decaying, but ignored the other teeth for two to three weeks between each dental visit. He further alleges that he had to pay $8 per dental visit in reprisal for filing a grievance, while other inmates who did not file grievances had multiple teeth tended to at the same visit and were given effective pain management. He also contends that he had to wait four months for an initial cursory examination and received inadequate care because there is only one dentist and one dental assistant for 1,900 inmates. Finally, he avers that the dentist refused to administer anesthesia during his appointments, and did so in reprisal for filing grievances.

Defendants move for summary judgment, arguing: (1) Plaintiff's retaliation claim fails because he did not file any grievances during the relevant time period, Dr. Yup did not know about any grievances other than the one he filed after he received dental care, and all inmates are charged a copay for medical visits; (2) there was no deliberate indifference to his dental needs; (3) defendant Hultenschmidt did not personally participate in the alleged constitutional violations; and (4) they are entitled to qualified immunity.

## **II. LEGAL STANDARD**

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

3

come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Retaliation**

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id.* (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

Defendants argue that while Plaintiff alleges that Defendants refused to treat his dental pain because of grievances he filed, his grievance history shows that he did not file any grievances between July 2012 and March 29, 2017. (ECF No. 27-1.) Instead, he only filed one grievance addressing dental care, grievance 20063045211, on March 29, 2017, after he was treated by dental staff. (ECF No. 27-2.) In his grievance he asserted deliberate indifference because for the prior three months he had been in agonizing pain with infected teeth that kept him up at night and made eating unbearable. He claimed to have repeatedly alerted dental, but nothing was done. (ECF No. 27-2 at 6, 8-18.) In response, he was told that he was seen by the dentist on March 16, 2017, and April 4, 2017, and during a sick call visit on March 27, 2017, the

dentist determined that pain medications were not medically indicated. Then, on April 4, 2017, tooth 18 was extracted. (ECF No. 27-2.)

In addition, Defendants contend that all inmates are charged a co-pay for medical visits, regardless of whether they file grievances or not. (ECF Nos. 27-3, 27-4.) Administrative Regulation (AR) 245 governs inmate medical charges, and states that inmates will be charged a fee for each visit to a medical provider for all non-exempt examinations or treatments; however, no inmate will be refused medical services for lack of financial resources to pay for medical examinations or treatments. (ECF No. 27-3 at 2.) AR 631 governs dental services within NDOC, and provides that inmates may be charged a co-pay for dental visits as outlined in AR 245. (ECF No. 27-4.)

Defendants have provided evidence that Plaintiff did not engage in any protected conduct (i.e. filing grievances), which directly contradicts his claim that he was denied dental care because he filed grievances. In addition, around the time he did file a grievance, he had multiple dental appointments. Defendants also submit evidence that Plaintiff was charged a co-pay because all inmates are charged co-pays, and this was not retaliatory. Plaintiff submits no argument or evidence in his response to raise a genuine dispute of material fact as to the retaliation claim; therefore, summary judgment should be granted in Defendants' favor.

**B. Eighth Amendment Deliberate Indifference**

   **1. Standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of

the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citation omitted), *overruled*

7

*on other grounds by Peralta v. Dillard*, 774 F.3d 1076 (9th Cir. 2014). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

"'Dental care is one of the most important medical needs of inmates.'" *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). "[T]he [E]ighth [A]mendment requires that prisoners be provided with a system of ready access to adequate dental care." *Id.* (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982)). "[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation[.]" *Id.* (citing *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). Delay may be actionable, however, when prison officials are aware that dental issues were causing the inmate pain or difficulty eating, and failed to take any action. *Id.*

**2. Defendants' Argument**

Defendants argue that on February 2, 2017, Plaintiff requested an appointment for fillings in his teeth, but agreed it was not an urgent issue. He claimed he was in such pain he could not eat or sleep, but on March 2, 2017, he rescheduled his appointment. He had an appointment on March 16, 2017, and complained that he had discomfort while chewing. He also complained of pain during his March 27, 2017 appointment, but was not provided medication because the doctor determined it was not needed. Plaintiff had several more appointments in March and April

of 2017 dealing with his teeth. Defendants argue that his difference of opinion with the dentist as to the course of treatment does not amount to deliberate indifference.

Dr. Yup provides a declaration stating that Plaintiff has a history of dental problems for which she has treated him since 2014. She saw him on December 12, 2016, for multiple dental issues. Due to the massive amount of decay on tooth 5, it was extracted, and she advised him to request an appointment (through a "kite") for restorative work on two other teeth. She advised Plaintiff that the restoration could wait for one or two months to allow for proper healing of tooth 5. His next appointment was rescheduled due to a custody issue. At his next appointment, the restorations were not done because another tooth had become painful and was extracted. She states that restoration and extraction are not done at the same appointment for "dental reasons" and due to possible complications in the healing process. Plaintiff's request for pain medication was denied as he did not have the pain level to justify medication, and the medication could complicate the healing process of the extraction. She opines that he received appropriate treatment for his diagnosis, and states that his non-compliance with proper dental hygiene and night care, as well as prior drug use and eating hard, crispy and sticky food complicated his care. (Yup Decl., ECF No. 27-5.)

Hultenschmidt argues that she did not personally participate in the alleged constitutional violation because she was a dental assistant and was not responsible for his treatment. As a dental assistant, she assists the dentist in the operation of the dental department at LCC, but has no responsibility for determining what treatments are performed or in calendaring the patient's appointments. She does not decide if patients are in need of medication or pain treatment. (Hultenschmidt Decl., ECF No. 27-6.)

Finally, Defendants assert that while Plaintiff claims there is only one dentist for 1,900 inmates at LCC that contributed to delays, this is on par with the number of dentists per capital in the United States.

**3. Plaintiff's Argument**

Plaintiff argues that in response to one of his kites on December 12, 2016, Dr. Yup wrote that Plaintiff was in pain with tooth five. He also asserts that March 27, 2017, was not the only time he complained of pain, and his visit on March 27, 2017, was not a dental appointment but a sick call appointment.

He further argues that Hultenschmidt's name is on all sign in sheets, and she violated his rights when she signed a dental sign in sheet and was the one in charge of scheduling. He also claims she had a vendetta against Plaintiff for some reason, and because of this she chose to delay and hinder Plaintiff's dental treatment. He provides a dental inmate co-pay sign in sheet dated March 16, 2017, that is signed by Hultenschmidt. (ECF No. 34 at 8.)

Plaintiff also submits an affidavit from inmate David A. Clemens who states that on several occasions in 2018 he and Plaintiff were in medical for dental sick call, and on both occasions Clemens was allowed into dental to have his teeth worked on without an appointment, while Plaintiff was told to wait and that he would be scheduled for an appointment. (ECF No. 34 at 9.)

**4. Dental Records and Kites**

The dental records and kites in the record reveal the following:

There is a notation in his dental records from December 5, 2016, that Plaintiff had requested an appointment for an x-ray and exam, and that he agreed to be scheduled and that it was not urgent. (ECF No. 29-1 at 3.)

Plaintiff sent a kite to dental on December 9, 2016, stating that he was on the waiting list to see the dentist, but his pain had become unbearable. The response states: "Nurse sick call." (ECF No. 27-7 at 4.)

The dental records reflect that x-rays were taken of the areas of concern on December 12, 2016. Tooth 5 showed gross decay and Plaintiff reported constant pain in that tooth. Tooth 7 had scar tissue from an extraction, but the area was healing well. Teeth 30 and 31 revealed a fragment of existing filling as well as decay. An extraction of tooth 5 was performed, and Plaintiff was give post-operative instructions and was told to kite for fillings for teeth 30 and 31. (ECF No. 29-1 at 3.)

On December 15, 2016, Plaintiff sent a kite to dental stating that he still needed to have a filling and to have his back bottom left side checked for cavities. (ECF No. 27-2 at 12; ECF No. 27-7 at 3.) In response, he was told that on December 5, 2016, he was seen at sick call and asked for an x-ray and exam, and agreed to be scheduled as it was non-urgent. (ECF No. 27-7 at 3.) On December 12, 2016, x-rays were taken, and there was a notation regarding teeth numbers 5, 7, 30 and 31, indicating Plaintiff had pain with tooth 5. An extraction was performed of tooth 5 due to gross decay. It was noted that there was scar tissue at 7, and 30 and 31 were asymptomatic, but he was advised to kite for a filling. (ECF No. 27-7 at 3.)

He sent another kite on January 23, 2017, stating that he had a kite in to see the dentist since December 15, 2016, for a cavity and a filling that fell out, and he had yet to be called and it was starting to be really aggravated. (ECF No. 27-2 at 13.)

Plaintiff appeared at sick call on February 2, 2017, requesting an appointment for fillings and agreed this was a non-urgent issue. (ECF No. 29-1 at 3.) On March 2, 2017, his appointment was rescheduled. (ECF No. 29-1 at 3.)

1	On March 6, 2017, he sent a kite stating that he had been told a few times that he was supposed to be scheduled, but has more fillings coming out and his cavities were becoming more sensitive. (ECF No. 27-2 at 14.) He was told in response that he would be notified when he had an appointment, and that it was not that day as he did not have an emergency. (*Id.*)

Plaintiff was seen on March 16, 2017, and complained of discomfort with chewing and wanted treatment as soon as possible. It appears that teeth 30 and 31 were treated, and it was noted that tooth 18 would be extracted at his next appointment. (ECF No. 29-1 at 3.)

He sent his next kite on March 27, 2017, stating that he was told he would be scheduled, but he had nothing for his pain and asked to have his tooth pulled "or something." He was told in response that the dentist did not feel he needed anything for the pain, and that he was scheduled for that week. (ECF No. 27-2 at 15.) There is a notation on March 27, 2017, that he was seen at sick call requesting pain medication. The dental record states: "Per Dr. Yup - no meds indicated. Will schedule to be seen for #18." (ECF No. 29-1 at 3.)

He sent another kite on March 31, 2017, stating that he had been on the waiting list for over three months, but his pain was so bad that it was affecting his sleep, and he was having a hard time eating. (ECF No. 27-7 at 5.)

Tooth 18 was extracted on April 4, 2017. It was noted that no post-operative medications were needed. He was instructed to kite for further treatment. (ECF No. 29-1 at 3.)

On June 21, 2016, Plaintiff sent in a kite stating that he was supposed to have been scheduled to see the dentist to check cavities and fillings that came out, and it was to the point where it was getting difficult to eat. In response he was told that at sick call on June 21, 2016, he agreed to be rescheduled. On June 30, 2016, the filling at 12 was fixed, and a temporary was placed, and his number 2 and 3 teeth were also treated. (ECF No. 27-7 at 2.)

His dental records from June 21, 2016, confirm that he agreed to be scheduled, and he was seen on June 30, 2016, and a deep seal was placed around all areas. It was noted Plaintiff was discontent due to exposure of root surfaces. He was advised to use Sensodyne. (ECF No. 29-1 at 3.)

On October 8, 2018, additional teeth were extracted. (ECF No. 29-1 at 2, 5.)

**5. Defendant Hultenschmidt**

Hultenschmidt states that she had no responsibility for determining what treatments are performed or for calendaring patient appointments, and does not decide whether patients are in need of medication or pain treatment. In his response, Plaintiff produces a single inmate copay sign in sheet for a visit with LCC dental on March 16, 2017, that is signed by Hultenschmidt. This is not evidence that Hultenschmidt knew of and disregarded Plaintiff's serious dental needs. Instead, it shows that she signed a document where Plaintiff agreed to pay charges according to NDOC policy for treatment. Plaintiff speculates that Hultenschmidt had a personal vendetta against him, but provides no factual basis or evidence to support his theory. Therefore, summary judgment should be granted in favor of Hultenschmidt.

**6. Dr. Yup**

The dental records and kites reflect that Plaintiff was seen on December 12, 2016, shortly after he had kited requesting treatment. At that time, tooth 5 was extracted and he was told to kite for fillings for two other teeth. He sent a kite on December 15, 2016, and on January 23, 2017, stating that his teeth were starting to become aggravated. According to Dr. Yup, she advised Plaintiff that the restoration work on the other two teeth could wait a month or two to allow for proper healing of the extracted tooth. He kited about the fillings again on February 2, 2017, but agreed that this was a non-urgent issue. His appointment in early March was rescheduled, and

according to Dr. Yup this was due to custody reasons. Plaintiff sent a kite a few days later, stating that his cavities were becoming more sensitive. He was seen on March 16, 2017, where he complained of discomfort with chewing. It appears he received treatment for the two teeth that needed fillings at that time, and he was advised that tooth 18 would be extracted at his next appointment. He sent a kite and was seen at sick call on March 27, 2017, stating that he needed something for his pain. Dr. Yup concluded that his pain level did not justify medication. He sent another kite on March 31, 2017, stating that his pain was so bad it was affecting his sleep and he was having a hard time eating. Tooth 18 was extracted shortly thereafter, on April 4, 2017.

This evidence demonstrates that Plaintiff received relatively timely care for his dental needs. The fact that the extractions/restorative work was spaced out over several visits is not evidence of deliberate indifference, as Dr. Yup states, and Plaintiff does not refute, that this is done to allow for healing. Nor is the initial delay in providing another appointment for the restorative fillings indicative of deliberate indifference where Dr. Yup states, and Plaintiff does not refute, that she told him that the restorative work could wait a month or two while the other extraction site healed. Then, when Plaintiff kited again in February, he agreed it was a non-urgent issue. He was seen shortly after he kited to say that his cavities were becoming more sensitive in early March. While Plaintiff states that he complained of pain multiple other times, he provides no evidence to support this; nor does he provide any factual detail as to when he complained and to whom he claims he complained. The first instance of a complaint was when he said he had difficulty chewing on March 16, 2017, and then he complained of pain in his kite and when he was seen at sick call on March 27, 2017, and asked for pain medication.[2] It was at

---

[2] Plaintiff's response points to Dr. Yup's indication that Plaintiff complained of pain with respect to tooth 5 at his December appointment, but this was addressed when the tooth was extracted at that time.

this point that Dr. Yup concluded his pain level did not warrant pain medication. He followed this up with another kite stating that his pain was so bad it was affecting his ability to eat and sleep. His tooth was extracted four days later. Plaintiff kited again in June of 2017, and was seen shortly thereafter.

While Plaintiff *alleges* that Dr. Yup denied him anesthesia during his appointments, there are no complaints in his kites, dental records or grievances that he was denied anesthesia (or any numbing agents) during his procedures. In addition, Plaintiff provides no evidence to support his theory that the ratio of dentists to inmates contributed to any delays in receiving care.

The question then, is whether Dr. Yup was deliberately indifferent when she denied Plaintiff anything for his pain between March 16, 2017, and the date his tooth was extracted on April 4, 2017, a period of a few weeks.

Dr. Yup is correct that this presents a difference of opinion between Plaintiff and Dr. Yup as to whether his condition warranted pain medication. To be actionable under the Eighth Amendment, there must be evidence that the denial of pain medication was "medically unacceptable under the circumstances" and was done "in conscious disregard of an excessive risk to Plaintiff's health." *Snow*, 681 F.3d at 987 (citation and quotation marks omitted).

The evidence reflects that Plaintiff complained of difficulty chewing on March 16, and then of continued pain on March 27, 2017, and Dr. Yup determined his pain level did not warrant pain medication. Plaintiff submitted another kite indicating that his pain was so bad that it was interfering with his ability to eat and to sleep. This is evidence sufficient to create a genuine dispute of material fact as to whether it was medically acceptable under the circumstances to deny Plaintiff pain medication. Dr. Yup argues that Plaintiff's actions and representations to medical staff show that his pain was not so severe that it warranted immediate attention;

however, his statements that treatment was not urgent pre-dated his complaints of pain in March. Moreover, Dr. Yup concluded on March 27, 2017, that Plaintiff's pain level did not warrant medication, but there is no evidence that she saw and examined him at that time. Nor does she provide any further explanation as to why his complaint of pain did not warrant treatment with even an over-the-counter pain reliever. Therefore, summary judgment should be denied with respect to the Eighth Amendment claim against Dr. Yup.

**C. Qualified Immunity**

Dr. Yup argues she is entitled to qualified immunity because when Plaintiff requested care and alleged pain, he was seen in a timely manner.

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017).

*Hunt,* which was decided in 1989, made it sufficiently clear that "[d]ental care is one of the most important medical needs of inmates" and that a prison official could violate the Eighth Amendment if he or she knows of dental issues that are causing the inmate pain or difficulty eating and delays care or fails to take any action. *Hunt*, 865 F.2d at 200-201.

Dr. Yup argues that a plaintiff must show that a defendant purposefully ignored or failed to respond to his pain or medical need. (ECF No. 27 at 11:1-2.) Dr. Yup specifically cites *Hunt*, and acknowledges its holding that a delay alone does not constitute an Eighth Amendment violation (*id.* at 11:3-5), but ignores the Ninth Circuit's subsequent statement that if a prison official knows of a serious dental issue that is causing an inmate pain and difficulty eating, and does nothing in response, the official could be found to have violated the Eighth Amendment.

16

Here, taking the facts in the light most favorable to Plaintiff, a trier of fact could determine that it was medically unacceptable for Dr. Yup to refuse to give Plaintiff anything for his pain in late March and early April of 2017, when he continued to complain of pain and difficulty eating after she initially denied his request for medication.

Therefore, Dr. Yup is not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' Motion for Summary Judgment (ECF No. 27) as follows:

(1) the motion should be **GRANTED** as to the retaliation claim against Defendants;

(2) the motion should be **GRANTED** as to the Eighth Amendment claim against defendant Hultenschmidt; and

(3) the motion should be **DENIED** as to the Eighth Amendment claim against Dr. Yup.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 19, 2020

                                                   *William G. Cobb* (signature)
                                                   William G. Cobb
                                                   United States Magistrate Judge